December 26, 2007

Honorable William H. Pauley III
District Court Judge, S.D.N.Y.
United States Courthouse
500 Pearl Street
New York, NY 10007

Re: United States v. Carlos Cespedes
    07 Cr. 842(WHP)


Dear Judge Pauley:

On October 19, 2007 Carlos Cespedes pled guilty to a two count indictment charging him with Conspiracy to Commit Access Device Fraud (18 USC 371), and Access Device Fraud (18 USC 1029(A)(2). He is scheduled for sentencing on January 11, 2008. I write now to provide Your Honor with information that is relevant to your sentencing decision.

### The Nature of the Offense

In the first half of 2007 in Bronx New York, Carlos Cespedes was approached by his half brother Alex Licea and asked whether he was interested in making some extra money. Licea, who had previously served time in a federal penitentiary was familiar with the crime of credit card fraud and because he was working for a business in New Jersey had access to credit card information of customers doing business with the company he worked for. It was simple and foolproof according to Licea. He was so sure of himself that his plan included having the merchandise shipped directly to his home and a local fax line was installed to help hatch the plan. He told Cespedes, he had nothing to worry about because the merchandise was being shipped to him and he advised Cespedes not to use his real name. At the time he conceived this plan Licea was

on Supervised Release for an unrelated federal crime.  Cespedes had not been in trouble since the middle of 2002.

In early July 2007 Licea was questioned by Postal Inspectors who warned him that if he lied to them he would be committing a federal crime.  He immediately cooperated and told the Inspectors that he brother Carlos was involved in the scheme.  In exchange for this information the government agreed to a bail package despite that fact that Alex Licea was on Supervised Release for a previous federal crime.  As of the writing of this letter he remains out on bail.

The complaint alleges that the in <u>February 2007</u> Licea provided his brother Carlos Cespedes with a credit card number issued to another individual.  This fact becomes significant in calculating Mr. Cespedes criminal history points.

On August 4, 2007 Carlos Cespedes was arrested while visiting his sister in Orlando Florida.  He has remained in custody on consent.  On October 19, 2007 Mr. Cespedes pled guilty to both counts of the indictment.

<u>The Guidelines Calculation</u>

While this Court is no longer required to impose a Guidelines sentence, the Second Circuit has held that District Courts must "consider" the Guidelines. In "order to fulfill this statutory duty to 'consider' the Guidelines a sentencing judge will normally have to determine the applicable Guidelines range." <u>Crosby</u>, 397 F.3d at 111. Thus, the first step in deciding what sentence is appropriate for Mr. Cespedes is to calculate the Guideline range for his offense.

Because the offense of conviction involves a Conspiracy to Commit Credit Card Fraud (Count One) and Credit Card Fraud (Count Two) both counts are grouped.  (U.S.S.G. §3D1.2(c) and (d) because one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts and the offense level is determined largely on the basis of the total amount of harm or loss…or some other measure of aggregate harm. (PSR, Page 7, ¶18)

The guidelines for a violation of 18 USC §371 is found in §2X1.1 which directs that the base level for the substantive offense be used. The substantive offense is Credit Card Fraud, a violation of 18 USC §1029(a)(5), which is found in 2B1.1(a)(2) and provides for a base level of 6.  (PSR, Page 7, ¶19)

Because the government alleges the loss to be more than $70,000 but less than $120,000 an increase of 8 levels is warranted pursuant to §2B1.1(b)(1)(E).  (PSR, Page 7, ¶20)

A 2 level increase is warranted because the offense involved the production or trafficking of unauthorized access devices pursuant to §2B1.1(b)(10)(B)(i). (PSR, Page 7, ¶21)

Because Mr. Cespedes timely, accepted responsibility for his offense his level should be reduced by 3 levels for a total adjusted offense level of 13. (PSR, Page 8, ¶27) Because Mr. Cespedes has several prior convictions resulting in 4 criminal history points he is placed in Criminal History Category III. (PSR, Page 9, ¶40) We believe this category seriously over represents his criminal history.

<u>History and Characteristics of the Defendant</u>

On the surface it would appear that Carlos Cespedes, a twenty three year old Hispanic male born in the Bronx and raised in a middle class family environment had all the tools necessary to succeed in life. He attended Catholic School, was exposed to a good work ethic and was given sufficient love and affection by his rather large and extended family. He presents well and has a warm and almost charming personality. Since becoming a young adult it appears that he has had steady employment as a cab driver. (PSR, Page 11, ¶¶ 52-53) During his years of employment he continued to live at home and contributed to the family expenses. (PSR, Page 11, ¶ 57)

Although Mr. Cespedes does not speak freely or offer information about his personal family tragedy his exposure to violence and loss should be considered by the Court when sentencing him. As reported in the PSR Carlos Cespedes lost two siblings to street violence in the Bronx, one half brother and one adopted brother. And it was not because either one of them was involved in criminal activity. One was killed during a robbery attempt while he was working as a cab driver, the other was killed while attending a party. The fact that he tattooed his arm "Rest In Peace" in memory of his lost brother indicates how traumatized he must have been. (PSR, Page 10, ¶ 47)

Another subject not easily re-visited by Carlos is his birth father who is currently serving a 50 year sentence in Green Haven Correctional Facility in New York State. When asked about his father during the PSR interview he indicated that his father had been in prison since his birth and that he has only visited him on several occasions but has no personal relationship with him. When asked what his father was incarcerated for he answered that he did not know. According to New York State Department of Correctional Services he has been in the system since March 1985 and is currently serving a 50 year sentence.[1]

Recently Mr. Cespedes became a father. His daughter Skylynn will be approximately three months old when he is sentenced. His girlfriend Erica Soto is a lovely young woman who has assumed the role of a mother while she

---

[1] The charges listed under inmate information indicate convictions for: attempted murder; assault in the first degree; sodomy in the first degree; and aggravated sexual abuse.

3

pursues her educational goals. (PSR, Page 10, ¶ 44) Because Mr. Cespedes comes from a strong family, they have pitched in to help her while she waits for the baby's father to return home. Based on the time I have spent with Mr. Cespedes he appears to be ready to resume the role of father and husband in a responsible way.

### Letters of Support

Attached are a series of letters from family and friends. One constant theme is apparent in all the letters. Carlos Cespedes is a hard working, responsible family man who has made some mistakes but has great personal potential. His adjustment in prison has been exemplary. His religious commitment is constant and predictable. He has a job waiting for him when he is released and most importantly he has place to go where family will play an important role in his re-entry. All and all it appears that Carlos Cespedes has a lot more going for him on the outside than most defendants in similar circumstances.

### The Imposition of a Non-Guidelines Sentence

Pursuant to the dictates of United States v. Booker, 543 U.S. 22, 125 S.Ct. 738, 160 L.Ed.2d 621(2005) and the Second Circuit's decision in United States v. Crosby, 39 F.3d 103 (2d Cir. 2005) the sentence imposed should be consistent with the statutory factors enumerated in 18 U.S.C. §3553(a) including the advisory Sentencing Guidelines established by the Sentencing Commission. The factors to consider are:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed –
(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established for –
(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines…;
(5) any pertinent policy statement…[issued by the Sentencing Commission];
(6) the need to avoid unwarranted sentence disparities among

> defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

A sentencing judge is permitted to find all the facts appropriate for determining a sentence, whether that sentence is a so-called Guidelines sentence or not. See Crosby, 397 F.3d at 111.

Factor (1) the nature and circumstances of the offense: suggests strongly that Carlos Cespedes not be given a guidelines sentence. He has strong community roots, a history of steady employment, a family that is dependent on his presence and income. It appears that his brother enticed him to become involved in a scheme he had no knowledge or experience of. When I asked him how he got involved he told me that his brother learned about credit card fraud in jail and advised him that there was no risk to him if he helped by placing orders for Licea with credit card numbers provided by Licea. Noticeably, during the years his brother Alex was incarcerated Carlos had no criminal contact with the law. Clearly, Alex was a person of influence in his life and so he gave in to pressure by his brother and became involved in the scheme. He knows what he did was wrong and understands he must make full restitution and live a responsible law abiding life once he is released. He is ready and willing to take on that role.

Factor (2) the need for the sentence imposed: factors (A), (B), and (C) do not require that Mr. Cespedes receive an 18 month prison sentence to satisfy the ends of justice. A sentence of 12 months would adequately reflect the seriousness of his offense, promote respect for the law and provide just punishment for the crime, especially since he will be required to pay full restitution.

Factor (3) the kinds of sentences available: Imposition of a non-guidelines sentence leaves many options open for the Court to consider. We suggest that 12 months imprisonment followed by 3 years Supervised Release would promote respect for the law and serve to monitor his conduct while under federal supervision.

Factor (4) the kinds of sentence and sentencing range established for similarly situated defendants as set forth in the guidelines: should the Court consider our Criminal History departure by placing Mr. Cespedes in Criminal History Category I he would be eligible for the requested relief even if a guidelines sentence were imposed.

Factor (5) policy statements: not applicable.

Factor (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct is

indeed a factor that militates in favor of a non-guidelines sentence for all the reasons set forth above regarding Mr. Cespedes' criminal history. The disparity at issue here is a matter of three to six months, almost an insignificant number in the general scheme of things. Not significant enough to affect continuity of sentencing but extraordinarily important to a young man who has just become a father and who is needed to help his young student wife.

Factor (7) the need to pay restitution: Mr. Cespedes recognizes his responsibility to pay restitution and is committed to cooperating in this endeavor. He is prepared to sign a confession of judgment and cooperate in whatever way the Court or probation recommends.

For all the above stated reasons it would be fair and equitable and would serve the ends of justice, deterrence and provide just punishment for the offense if the Court imposed a non-guidelines sentence consistent with the dictates of 18 U.S.C. §3553(a).

## GROUNDS FOR DEPARTURE
### Horizontal Departure

Mr. Cespedes also asks that this Court award a horizontal – or criminal history category -- departure. The United States Sentencing Commission has explicitly recognized that the point system the guidelines mandate for determining criminal history categories may generate results that are not appropriate. A rigid application of the guidelines' formula may create situations "where the court concludes that a defendant's criminal history category significantly over-represents the seriousness of a defendant's criminal history or the likelihood that the defendant will commit further crimes." U.S.S.G. §4A1.3. Where such anomalies arise, a so-called horizontal departure to a lower criminal history category may be given. United States v. Rivers, 50 F.3d 1126, 1131 (2d Cir. 1995). The unusual individual facts and circumstances of Mr. Cespedes' case warrant such a departure.

The United States Sentencing "Commission has explained that the escalating sentence ranges prescribed by the CHCs are intended to achieve the purpose of deterrence, see U.S.S.G. Ch. 4, Pt. A, intro. comment." United States v. Mishoe, 241 F.3d 214, 220 (2d Cir. 2001). Consistent with this goal, category III is structured to apply to defendants with very extensive criminal histories. Criminal History Category III encompasses defendants who have four, five or six points. Thus, a defendant with two prior felony convictions – including for violent crimes – would be in Criminal History Category III if he received sentences in excess of one year and one month for either of the prior convictions. U.S.S.G. §4A1.1(a). The sentencing ranges in category III are concomitantly harsh. The maximum guidelines punishment permitted for a defendant in Criminal History Category I at offense levels 13 through 37 is the minimum amount permitted for a defendant at the same offense level in Criminal History Category III. At level 37,

for example, the range for a defendant in criminal history category I is 210 to 262 months. At Criminal History Category III, the same guideline level yields a dramatically increased sentencing range of 262 to 327 months.

For several reasons, Mr. Cespedes' criminal background is far less serious than his placement in this criminal history category would indicate. First, Mr. Cespedes gathered his four criminal history category point through far more innocuous conduct than the majority of defendants.

One of Mr. Cespedes' points flows from his first offense, when he was 17 years old.  (PSR, Page 9, ¶38) He was charged with attempted criminal possession of stolen property. The property referred to was a stolen sanitation plaque placed in the window of his car.  He did not know the plaque was stolen when he placed it in his car.  In New York State in order to be convicted of this offense you must know the item you possessed was stolen.  His lawyer convinced him to take a plea because he was eligible for youthful offender treatment and as a consequence under New York State law he would not have a criminal record and his conviction could not be used against him in the future. While that may be true in state court it certainly is <u>not</u> true in federal court.[2]   This B misdemeanor plea the lowest possible misdemeanor in New York State court, would have exposed him to a maximum sentence of 90 days imprisonment.  In State court an A misdemeanor exposes an individual to a maximum punishment of 1 year imprisonment, a dramatic difference from a B misdemeanor, while in federal court no distinction exists as you can receive 1 criminal history point for both an A misdemeanor or a B misdemeanor so long as you do not serve more than 60 days in jail.

Because he was a juvenile when the above offense was committed he is also entitled to the relief set forth in USSG §4A1.2(d) if he can show a hiatus of five years before the commencement of the instant offense.  Although the government advises me that some of the transactions he is accused of making occurred in January 2007 no discovery turned over to me substantiates that fact. Based on discovery provided by the government the earliest transaction occurred on February 1, 2007.  And according to my client discussions with the co-defendant about breaking the law occurred simultaneously with the actual deed. When I discussed this issue with the government I was advised that the co-

---

[2] Under New York State Law, a youthful offender conviction cannot be used to enhance a sentence later on and the record is sealed for all practical purposes.  The only reason it shows up on the NYSED sheet is to alert the District Attorney's Office that an individual has already received a "YO" and therefore cannot receive another one at some future time.  Defendants in State court are routinely advised that if questioned by an employer as to whether or not they have a criminal conviction and the conviction is a YO they can honestly answer NO.

7

defendant provided them with the estimated time of December 2006 which appears in the indictment as the time the scheme was hatched. Considering the issues at stake – if the conspiracy hatched after January 25, 2007 no criminal history points would attach for the juvenile offense - the date the conspiracy actually hatched is based on pure conjecture with no outside support for this arbitrary date.

His second offense also resulted in an unnecessary sentence and an unnecessary conviction when he was 18 years old. The facts surrounding this case which is characterized as a burglary but in fact was the theft of a auto, indicates that he was with a friend who unbeknownst to him had stolen a car. He was walking with the friend to the car when they were arrested before entering the vehicle. He was released on bond but was unaware of the adjourn date and as a consequence missed his court appearance. When his co-defendant advised him that a warrant had been issued against him he voluntarily returned to court and was remanded. He remained incarcerated for 71 days despite the fact that he returned voluntarily. When an offer of "freedom" was made he pled guilty and accepted probation. Even assuming he was guilty of the charges the facts related to the amount of time he remained incarcerated, 71 days, the result of missing a court date, resulted in one additional criminal history point because he served over 60 days in jail on that offense before being released. (USSG §4A1.1(b); PSR, Page 9, ¶ 36)

His third offense, a misdemeanor which occurred in October 2003 also has multiple mitigating factors that should be considered by this Court. Apparently, Mr. Cespedes was the victim of a car-jacking, which he reported, to the police. The car was recovered and inventoried and because a small amount of cocaine was found in the glove box he was charged with possession of a controlled substance. It is inconceivable that a Bronx jury would have convicted him of the offense. When I asked him how he could have pled guilty to the charge his answer was, "I needed to get the case over with because of work and because I was offered a conditional discharge with no possibility of jail time I took it."

Thus, the circumstances surrounding Mr. Cespedes' entry into Criminal History Category III differ from those of most defendants in a very significant respect. In the normal scenario, a defendant who falls into this category committed a crime, was convicted, received jail time in excess of a year, committed another crime, received another sentence and then committed a third crime. Where a defendant receives a relatively long sentence or multiple sentences and offends again, it is reasonable to conclude that he is not easily deterred from committing crime. It is fair then to impose a longer sentence for any subsequent convictions. However, where as here a defendant served little or no time for prior offenses, a subsequent sentence does not need to be draconian to achieve the desired deterrent effect. <u>Mishoe</u>, 241 F.3d at 220.

Under these highly unusual circumstances, Mr. Cespedes' criminal history category significantly over-represents his criminal background. It is respectfully submitted that the individualized circumstances here all weigh in favor of the Court departing to Criminal History Category I.

## CONCLUSION

It is respectfully submitted that under the circumstances of this case and given the history and characteristics of the life and motivations of Carlos Cespedes, the Court should impose a non-guidelines sentence of 12 months which would be sufficient to help him deal with his responsibilities to his family and the victims of his offense, satisfy the ends of justice, provide adequate deterrence to criminal conduct and punish him sufficiently for his actual conduct. This 2 level reduction would more accurately reflect his culpability and role in the offense. In the alternative, should the Court impose a Guidelines sentence the Court should grant horizontal departure to Criminal History Category I and impose a sentence of 12 months followed by 3 years Supervised Release.

Respectfully submitted,

_____
Allan P. Haber

cc: Kenneth Polite, Esq.
    Assistant United States Attorney